UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA MORENO,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　Defendant. | Case No. CV 16-9145-KK<br><br><br>MEMORANDUM AND ORDER |

Plaintiff Francisca M. Moreno ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///
///
///

---

[1] Pursuant to the request of the parties, the Court substitutes Nancy A. Berryhill, the current Acting Commissioner of Social Security, as Defendant in this action. Fed. R. Civ. P. 25(d).

# I.
# **PROCEDURAL HISTORY**

On August 20, 2013, Plaintiff filed an application for SSI, alleging a disability onset date of December 15, 2007. Administrative Record ("AR") at 160-68. Plaintiff's application was denied initially on December 18, 2013. Id. at 93-97. On January 14, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 98.

On June 22, 2015, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ (the "ALJ Hearing"). Id. at 47-74. A medical expert ("ME"), vocational expert ("VE"), and Plaintiff's mother also testified at the hearing. Id. at 50-58, 66-70, 71-74. On August 5, 2015, the ALJ issued a decision denying Plaintiff's application for SSI. Id. at 6-37.

Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision. Id. at 5. On October 14, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-4.

On December 9, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on July 24, 2017. Dkt. 18, JS.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on August 1, 1996, and her alleged disability onset date is December 15, 2017. AR at 79. She was eleven years old on the alleged disability onset date and eighteen years old at the time of the ALJ hearing. Id. at 74, 79. As of the date of the ALJ hearing, Plaintiff was in the eleventh grade at a special education high school. Id. at 64. Plaintiff alleges disability based on learning disability, bipolar disorder, and asthma. Id. at 79.

///
///

# III.
# **STANDARD FOR EVALUATING DISABILITY**

## A. DISABILITY IN A CHILD

A child (i.e., individual under eighteen years of age) claiming disability for SSI must suffer from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(C)(i). An impairment satisfies this requirement if it meets or equals in severity any impairment that is listed in Title 20 of the Code of Federal Regulations, Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. § 416.924(d).

To decide if a child is disabled for SSI, an ALJ conducts a three-step inquiry:

1. Is the child engaged in substantial gainful activity? If so, the ALJ finds the child is not disabled. If not, the ALJ proceeds to step two.
2. Does the child have a severe impairment? If an impairment "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the ALJ finds the impairment is not severe and denies the child's claim. If the ALJ finds the child has a severe impairment, the ALJ proceeds to step three.
3. Does the child's severe impairment meet, medically equal, or functionally equal an impairment in the Listings? If so, the ALJ finds the child is disabled, assuming the twelve-month duration requirement is also met. If not, the ALJ finds the child is not disabled.

See id. § 416.924.

With respect to the third step, a child's impairment "is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." Id. § 416.926(a). To establish medical equivalence, the

child "must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526).

In addition, to determine whether a child's severe impairment functionally equals a listed impairment, the ALJ assesses functional limitations the child's impairment caused in six domains:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for self; and
6. Health and physical well-being.

See 20 C.F.R. § 416.926a(a), (b). To functionally equal a listed impairment, a child's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. Id. § 416.926a(a). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). It is "'more than moderate'" but "'less than extreme.'" Id. An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i). The ALJ reserves the extreme rating for "the worst limitations." Id.

**B.    DISABILITY IN AN ADULT**

For an adult to qualify for SSI, the claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing

4

the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett, 180 F.3d at 1098.

To decide if an adult claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

At the time Plaintiff filed her application, she was under the age of eighteen. However, Plaintiff turned eighteen prior to the date of the hearing before the ALJ. Thus, the ALJ employed the three-step sequential evaluation process for determining disability of claimants under the age of eighteen, in addition to the five-step sequential evaluation process for determining disability of adult claimants.

**A.  CHILD DISABILITY ANALYSIS**

**1.  Step One**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since the date the application was filed" on August 20, 2013.  AR at 14.

**2.  Step Two**

At step two, the ALJ found that before attaining age eighteen, Plaintiff "had the following severe impairments: disruptive mood dysregulation disorder, borderline intellectual functioning, and mild episodic asthma." Id.

**3.  Step Three**

At step three, the ALJ found that before attaining age eighteen, Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A or B." Id. at 15.

The ALJ also found that prior to attaining age eighteen, Plaintiff "did not have an impairment or combination of impairments that functionally equaled the listings." Id. at 17. The ALJ assessed the functional limitations Plaintiff's

6

impairments caused and found less than marked limitations or no limitations in each of the six domains. Id. at 17-27.

**B.     ADULT DISABILITY ANALYSIS**

**1.     Step One**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since the date the application was filed" on August 20, 2013. Id. at 14.

**2.     Step Two**

At step two, the ALJ found Plaintiff "has not developed any new impairment or impairments since attaining age eighteen. The [Plaintiff] has the following severe impairments: unspecified mood disorder and mild episodic asthma." Id. at 28.

**3.     Step Three**

At step three, the ALJ found that since attaining age eighteen, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals a listed impairment." Id.

**4.     RFC Determination**

The ALJ found that since attaining age eighteen, Plaintiff has had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: non-complex routine tasks, no interaction with the public, no task requiring hypervigilance, only occasional tasks requiring teamwork, and no concentrated exposures to pulmonary irritants such as fumes, odors, dust, and gases." Id. at 30.

**5.     Step Four**

At step four, the ALJ found Plaintiff "has no past relevant work." Id. at 31.

**6.     Step Five**

At step five, the ALJ found "[s]ince attaining age 18, considering [Plaintiff's] age, education, work experience, and residual functional capacity, jobs have existed

7

in significant numbers in the national economy that [Plaintiff] has been able to perform." Id.

## V.
## **PLAINTIFF'S CLAIMS**

Plaintiff presents two disputed issues: (1) whether the ALJ properly considered the criteria for listing 112.05D; and (2) whether the ALJ properly considered the criteria for listing 12.05C. JS at 2.

## VI.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'" (citation omitted)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation,

1  we must uphold the ALJ's findings if they are supported by inferences reasonably
2  drawn from the record.").
3      The Court may review only the reasons stated by the ALJ in his decision
4  "and may not affirm the ALJ on a ground upon which he did not rely." Orn v.
5  Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be
6  considered harmless if it is "clear from the record" that the error was
7  "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d
8  at 885 (citation omitted).

## VII.

## DISCUSSION

## THE ALJ DID NOT PROPERLY DETERMINE PLAINTIFF'S IMPAIRMENTS DO NOT MEET OR EQUAL LISTINGS 112.05D AND 12.05C

Plaintiff argues "there is ample evidence to show that Plaintiff meets" Listings 112.05D and 12.05C. JS at 3, 14. Plaintiff specifically argues she meets both Listings 112.05D and 12.05C because (1) Plaintiff's Full Scale IQ score of 70 is within the required range of the Listings; and (2) Plaintiff was diagnosed with bipolar disorder, learning disorder, disruptive mood dysregulation disorder, and asthma – all of which manifested during her developmental period and impose an additional and significant limitation of function. Id. at 3-4, 14-15.

As set forth below, while the ALJ concluded Plaintiff does not suffer from "marked limitations with respect to social functioning, personal functioning, or difficulties in maintaining concentration, persistence, or pace," he failed to properly consider whether Plaintiff has deficits in adaptive functioning. See AR at 14, 16.

///
///
///

## A. APPLICABLE LAW

Listings 12.05 and 112.05 define intellectual disability in adults and children, respectively. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1. §§ 12.00, 112.00 (2015).[3] "The structure of the mental disorders listings for children under age 18 parallels the structure for the mental disorders listings for adults but is modified to reflect the presentation of mental disorders in children." Id. §§ 12.00A, 112.00A. To meet Listings 12.05 and 112.05, the regulations require a claimant satisfy "the diagnostic description in the introductory paragraph and any one of" the four additional sets of criteria for Listing 12.05 (A through D) and six sets of criteria for Listings 112.05 (A through F). Id.

Pursuant to the introductory paragraphs of Listings 12.05 and 112.05, an intellectual disability is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." Id. §§ 12.05, 112.05. Listing 12.05, however, additionally requires that "adaptive functioning initially manifest[] during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. § 12.05.

As to the "additional sets of criteria," Subsection C of Listing 12.05 and Subsection D of Listing 112.05 both require "[a] valid verbal, performance, or full

---

[3] A revised Listing of Impairments went into effect on January 17, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 Fed. Appx. 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, unless otherwise noted, the Court applies the versions of 20 C.F.R. Pt. 404, Subt. P, App. 1 that were in effect at the time of the ALJ's August 5, 2015 decision.

scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant" work-related limitation of function, for adults, or general limitation of function, for children. Id. §§ 12.05C, 112.05D.

Thus, to meet Listings 12.05C and 112.05D, a claimant must generally satisfy "three main components:" (1) subaverage intellectual functioning with deficits in adaptive functioning; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant limitation of function. Kennedy v. Colvin, 738 F.3d 1172, 1175–76 (9th Cir. 2013).

**B.    RELEVANT FACTS**

In evaluating Plaintiff's limitations, the ALJ relied on three physician opinions, as well as the opinion of Plaintiff's special education teacher. The ALJ additionally relied on Plaintiff's testimony, her Individualized Education Plan, and her treatment records at Kedren Community Health Center.

**1.    Plaintiff's Testimony**

On the date of the ALJ hearing, Plaintiff testified she was eighteen years old, "still in 11th [grade]," and did not have a drivers' license. AR at 59. Plaintiff stated she "get[s] frustrated a lot" and has anger outbursts about "twice a day." Id. at 62. As for her education, Plaintiff testified she had to repeat ninth grade and a portion of tenth grade. Id. at 64. She stated she has an Individualized Education Program ("IEP") and is not in "regular classes." Id. Plaintiff testified her classes are small – sometimes only four students. Id. Plaintiff claimed she tried to attend larger classes, where there were about twenty to thirty students, but "[i]t didn't really work out" because "it's only one staff, it gets frustrating because they can only help one person at a time." Id. at 65. As for her work history, Plaintiff testified she had a part-time job during one summer where she was responsible for "wav[ing] the flag" on the street corner for Liberty Taxes. Id. at 60.

///

///

### 2. Dr. David Glassmire's Opinion

The ALJ relied on and gave great weight to the opinion of David Glassmire, Ph.D., a clinical psychologist who testified as a medical expert at the hearing before the ALJ. Id. at 14. Dr. Glassmire reviewed all the evidence in the record except for Plaintiff's IEP. Id. at 51-52. Ultimately, Dr. Glassmire opined Plaintiff does not meet or medically equal Listing 112.04 or 112.05. Id. at 51-52.

### 3. Dr. R.E. Brooks's Opinion

The ALJ relied on and gave great weight to the opinion of Dr. R.E. Brooks, MD, the State agency medical psychiatrist, who reviewed Plaintiff's medical records to assist in the disability determination. Id. at 87. Dr. Brooks evaluated Plaintiff's functionality in the six domains and opined Plaintiff's impairments do not meet or medically equal a Listing. Id. at 86-87.

### 4. Dr. Avazeh Chehrazi's Opinion

The ALJ relied upon and gave some weight to the opinion of consultative examiner, Dr. Avazeh Chehrazi, Ph.D. Id. at 21. Dr. Chehrazi is a clinical psychologist who examined Plaintiff for purposes of her disability claim on November 11, 2013. Id. at 21, 317-22. Dr. Chehrazi noted Plaintiff "was hospitalized on a psychiatric basis in 2008 due to severe behavioral problems and aggression" and "is currently receiving outpatient psychiatric care and psychotherapy and has been diagnosed with bipolar disorder and ADHD." Id. at 318. Additionally, Dr. Chehrazi reported Plaintiff "repeated kindergarten," was enrolled "in a special education 9th grade class" which she also repeated, "began receiving special education services in 6th grade," and "receives average to below average grades." Id. at 319.

Dr. Chehrazi performed a complete psychological evaluation, the Wechsler Adult Intelligence Scale IV test, and the Vineland Adaptive Behavior Scales test. Id. at 317. Dr. Chehrazi concluded Plaintiff's cognitive ability falls within the borderline range. Id. at 321-22. Further, Dr. Chehrazi opined Plaintiff "would be

able to understand, remember and carry out short, simplistic instructions with no difficulty. She also would have moderate difficulty to understand, remember and carry out detailed and complex instructions. She would have mild difficulty to comply with school rules such as safety and attendance. She would have no difficulty to respond to change in a normal classroom setting. She would have moderate difficulty to maintain persistence and pace in a normal school setting." Id. at 322. Finally, Dr. Chehrazi found Plaintiff "would have moderate difficulty to interact appropriately with teachers, adults and peers on a consistent basis and in an age-appropriate manner." Id.

### 5. Stephanie Gomez's Opinion

The ALJ also considered the opinion of Plaintiff's special education teacher, Stephanie Gomez, who teaches at Hawthorne Academy, a non-public, special education school. Id. at 307. Ms. Gomez has known Plaintiff for two years, and spent time with her on a daily basis. Id. at 307-14. Ms. Gomez noted significant improvement in Plaintiff during the 2013 school year, but also noted continued areas of impairment in interacting and relating with others, including "slight problem[s]" "expressing anger appropriately" and "following rules." Id. at 310.

### 6. Plaintiff's Individualized Education Program

The ALJ also considered notes from Plaintiff's Individualized Education Program, which tracks Plaintiff's behavior, social, emotional, and academic records at school. Id. at 450-550. While Plaintiff's most recent IEP reflected an improvement in her functioning at school, it noted areas where Plaintiff continued to struggle. Id. at 19. For example, the IEP noted Plaintiff still struggles in "[m]aintaining her emotions in the home setting," and she continues to need help in "managing anger, frustration, and other difficult feelings." Id. at 453. Although Plaintiff's attendance has improved, Plaintiff "is still averaging at least one absence a week." Id. Additionally, the IEP noted Plaintiff's impairments require Plaintiff "to have instruction broke[n] up into parts, instruction to be repeated and/or

clarified, one-on-one assistance when needed as well as extra time to complete assignments." Id. Furthermore, the IEP reported Plaintiff "benefits from constant reminders of standard school policies, frequent checks for understanding of expectations, and verbal recognition for her endeavors and accomplishments." Id. Lastly, Plaintiff's academics in 2012 indicated average scores in reading fluency, below average comprehension skills, low average math fluency, and average spelling skills. Id. at 583. A report from 2012 also indicates Plaintiff suffers from "issues of distractibility" and a "lack of focus and attention." Id. at 523.

### 7. Treatment Records From Kedren Community Health Center

The ALJ also relied upon Plaintiff's medical records from Kedren Community Health Center between January 2013 and February 2015. Id. at 18, 234-60, 381-45. According to the record, Plaintiff visited Kedren on various occasions seeking mental health services. Id. at 404-35. The initial assessment report indicated Plaintiff sought treatment due to anger spells, loss of sleep, and crying spells. Id. at 245. The initial assessment also reported issues with Plaintiff's developmental milestones during her early years – noting that she had to repeat kindergarten, lacked impulse control, and fought with her peers. Id. at 248. It further reported Plaintiff was receiving Ds and Fs during her tenth grade year at Hawthorne. Id. at 249. Although notes from Kedren reflect Plaintiff's mental health symptoms have improved with medication, a treating physician opined Plaintiff's "symptoms impair her from functioning in daily living activities." Id. at 413.

## C. ANALYSIS

Here, the ALJ failed to properly consider whether Plaintiff has deficits in adaptive functioning, particularly in light of the fact that (1) Plaintiff is been enrolled in special education classes, (2) has been required to repeat grade levels in the past, and (3) Plaintiff's reported improvements were both recent and relative to her past impairments.

14

Adaptive functioning[4] refers to a claimant's "[ ]ability to cope with the challenges of ordinary everyday life." Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007). It evaluates a claimant's "effectiveness in areas such as social skills, communication skills, and daily-living skills." Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 677 (6th Cir. 2009) (quoting Heller v. Doe, 509 U.S. 312, 329, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). "The term 'adaptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include . . . educational and social achievements." Lyons v. Colvin, No. 7:13-CV-00614, 2014 WL 4826789, at *10 (N.D.N.Y. Sept. 29, 2014) (citing POMS DI 24515.056D2). Examples of evidence supporting a finding of deficits in adaptive functioning can include "special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." Campbell v. Astrue, No. 1:09-CV-00465 GSA, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011).

Plaintiff has been diagnosed with ADHD and suffers from mood disruptive disorders, including bipolar disorder. AR at 408, 572, 582-83. Plaintiff's documented history of resulting impairment and treatment has spanned at least thirteen years. Id. at 248. At one point, Plaintiff's mood disorders became so

---

[4] The 2017 regulations define adaptive functioning as "how [a claimant] learn[s] and use[s] conceptual, social, and practical skills in dealing with common life demands. It is [her] typical functioning at home, at school, and in the community, alone or among others." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.05, 112.05 (2017). The regulations note that "[t]he fact that [a claimant] engage[s] in common everyday activities, such as caring for [her] personal needs, preparing simple meals, or driving a car, will not always mean that [she] do[es] not have deficits in adaptive functioning . . ." Id. Additionally, a conclusion on adaptive functioning can "rest on whether [a claimant] do[es] [her] daily activities independently, appropriately, effectively, and on a sustained basis. If [a claimant] receive[s] help in performing your activities, [the ALJ] need[s] to know the kind, extent, and frequency of help [the claimant] receive[s] in order to perform them. [It] will not [be] assume[d] that [a claimant's] ability to do some common everyday activities, or to do some things without help or support, demonstrates that [her] mental disorder does not meet the requirements . . . ." Id.

15

severe she required hospitalization "on a psychiatric basis" because of her "behavior problems and aggression." Id. at 318. Not surprisingly, Plaintiff has been enrolled in highly structured, special education classes since the Sixth Grade. Id. at 319. In addition, the severity of Plaintiff's limitations have also warranted an IEP. Id. at 450-584. Moreover, despite her enrollment in special education classes with an IEP, Plaintiff has continued to struggle. For example, Plaintiff was required to repeat Ninth Grade and a portion of Tenth Grade. Id. at 64. Additionally, the record reflects Plaintiff obtained grades which were below average and suffered from "issues of distractibility" and a lack of focus and attention. Id. 523, 583. Furthermore, notes from Ms. Gomez during the 2012-2013 school year indicate Plaintiff went through periods of time where she was absent frequently and would not make up assignments or complete her homework. Id. at 307, 309-10. Notably, Ms. Gomez is one of the few individuals who interacts with Plaintiff on a daily basis, and thus has the opportunity to observe Plaintiff in her day to day functions. Id. at 307. Once again, all of these continued challenges and difficulties have occurred despite the structure, resources, and individualized attention that special education and an IEP provide.

The ALJ largely focused on improvements in Plaintiff's impairments. See id. at 18-20, 27, 29, 30. While the record reflects Plaintiff has experienced substantial improvement in managing her emotions and performing at school, the record also supports a finding that Plaintiff's improvement occurred relatively recently and, once again, in the highly-structured setting of a special education school, with the guidance of an IEP. See Lyons v. Colvin, No. 7:13-CV-00614, 2014 WL 4826789, at *9 (N.D.N.Y. Sept. 29, 2014) ("[A]ttendance in special education classes and an education pursuant to an IEP have been construed as factors indicative of deficits in adaptive functioning."); Forsythe v. Astrue, No. 1:10-CV-01515 AWI, 2012 WL 217751, at *7 (E.D. Cal. Jan. 24, 2012) ("Courts have found that circumstantial evidence can infer a deficit in adaptive

16

functioning."); Aminzadeh v. Comm'r of Soc. Sec., No. 1:10-CV-01068 GSA, 2011 WL 3322798, at *8 (E.D. Cal. Aug. 2, 2011) (finding deficits in adaptive functioning where, although, "Plaintiff did graduate from high school, the record establishes that she attended special education classes and had difficulty in the areas of reasoning, memory, and attention"); AR at 307-12, 450-55. Moreover, despite relative improvement in her emotional control and understanding at school, there is evidence Plaintiff continues to struggle. For example, Ms. Gomez noted Plaintiff has "slight problem[s]" expressing anger appropriately and following rules. Id. at 310. Similarly, Plaintiff's IEP reflects Plaintiff still has difficulty in "[m]aintaining her emotions in the home setting," and she continues to need help in "managing anger, frustration, and other difficult feelings." Id. at 453. Additionally, the IEP nots Plaintiff's impairments continue to require Plaintiff "have instruction broke[n] up into parts, instruction . . . repeated and/or clarified, one-on-one assistance when needed as well as extra time to complete assignments." Id. Moreover, one of Plaintiff's treating physicians at Kedren opined Plaintiff's "symptoms impair her from functioning in daily living activities." Id. at 413.

     Ultimately, in light of Plaintiff's low IQ score, additional affective disorders, documented history of treatment and impairment, and continuing challenges despite special educational classes and an IEP, the ALJ's failure to make an explicit finding regarding any deficits in Plaintiff's adaptive functioning requires reconsideration.

## VIII.
## RELIEF

### A. APPLICABLE LAW

     "When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citation omitted). "We may exercise our discretion and direct an award

of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.　ANALYSIS**

In this case, the record has not been fully developed. The ALJ failed to consider whether Plaintiff suffers from deficits in adaptive functioning, particularly in light of her special education history. Accordingly, remand for further proceedings is appropriate.

## IX.
## CONCLUSION

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: September 14, 2017

HONORABLE KENLY KIYA KATO
United States Magistrate Judge